PS/CD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BRION PETERS,

        Petitioner,

  -v-                                          16-CV-0084-FPG

MR. GERALD JONES,                 DECISION AND ORDER

        Respondent.

---

## INTRODUCTION

*Pro se* petitioner Brion Peters ("Petitioner"), who is currently incarcerated at Livingston Correctional Facility, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Petition"). ECF Nos. 1, 5, 18.[1] Petitioner challenges his conviction on grounds of insufficiency of the evidence, ineffective assistance of appellate counsel, and that he was selectively and vindictively prosecuted and sentenced, as more particularly specified in the Petition. ECF No. 18. For the reasons that follow, the Petition is dismissed, and all other relief is denied.

## PROCEDURAL BACKGROUND

On May 7, 2011, Petitioner and one Gary Varlan ("Varlan") travelled to Varlan's cabin and makeshift methamphetamine laboratory in Chemung County, New York, to make and use meth. *See* ECF Nos. 18 at 8-14; 30-1 at 3. On the way to the cabin, they picked up Brian Yontz

---

[1] Petitioner filed his Petition on January 29, 2016. ECF No. 1. Petitioner, having been advised by the Court that one or more of the grounds for his Petition had not been exhausted, as required by 28 U.S.C. § 2254(b), chose to withdraw the Petition in order to permit time to exhaust all of the claims. ECF No. 4. Petitioner later filed a Second Petition, ECF No. 5, which the Court construed as a Motion to Amend the First Petition and granted, ECF No. 6. Petitioner filed a second Motion to Amend the Petition and for Default Judgment, ECF No. 17, which the Court granted as to Petitioner's request to add claims and withdraw unexhausted claims, and denied as to Petitioner's request for default judgment, ECF No. 24.

("Yontz") and Kanisha Wood ("Wood'). *Id*. While making meth, Petitioner placed a plastic pitcher of Coleman lantern fuel on top of a wood-burning stove. *Id*. The plastic melted and the fuel ignited, burning the cabin down. *Id*. Wood suffered third-degree burns and died hours later as a result of her injuries. *Id*.

A Chemung County Grand Jury returned an indictment charging Petitioner with manslaughter in the second degree and unlawful manufacture of methamphetamine in the third degree. ECF No. 30-2 at 43-44. Before Petitioner's trial, Varlan pleaded guilty to second-degree manslaughter in satisfaction of the entire indictment and in exchange for an indeterminate prison sentence of two to six years. ECF No. 30-1 at 4. Yontz was not charged with any crime. *Id*.

Petitioner's jury trial commenced before Judge Hayden on February 6, 2012 in Chemung County Court. ECF No. 30-1 at 3. Petitioner was found guilty on both counts, and on March 12, 2012 he was sentenced to an indeterminate prison term of 7½ to 15 years on the manslaughter count and a determinate four-year term, plus two years of post-release supervision, on the meth manufacturing count. *Id*. Petitioner was ordered to pay $43,650.34 in restitution for Woods' medical and funeral expenses. *Id*.

Petitioner, through appellate counsel, filed a direct appeal arguing that the manslaughter verdict was not supported by legally sufficient evidence and was against the weight of the evidence. ECF No. 30-4 at 11-50. The New York State Supreme Court Appellate Division, Third Department, unanimously affirmed the judgment, concluding that the trial evidence was legally sufficient to support Petitioner's conviction of manslaughter in the second degree. *People v. Peters*, 126 A.D.3d 1029 (App. Div. 3d Dep't), *lv. denied* 25 N.Y.3d 991 (April 24, 2015).

On March 17, 2016, Petitioner filed a *pro se* motion in the Appellate Division for a writ of error coram nobis ("First Error Coram Nobis Motion") arguing ineffective assistance of appellate

counsel for failure to raise on appeal "more viable issues which were clearly supported by the record," including ineffective assistance of trial counsel for waiving a restitution hearing, and that the verdict was against the weight of evidence.  ECF No. 30-6 at 32-40.  The Appellate Division summarily denied the motion on May 5, 2016, and the Court of Appeals denied leave to appeal on August 30, 2016.  *People v. Peters*, N.Y. App. Div. LEXIS 6570 (App. Div. 3d Dep't), *lv. denied* 28 N.Y.3d 935 (August 30, 2016); *see also* ECF No. 30-6 at 105-114.

Petitioner filed a second *pro se* coram nobis motion ("Second Error Coram Nobis Motion") arguing ineffective assistance of appellate counsel for failing to "raise and argue more substantial issues of merit," including that Petitioner's federal due process rights were violated by prosecutorial vindictiveness during plea negotiations and judicial vindictiveness at sentencing. ECF No. 30-6 at 115-120.  The Appellate Division summarily denied the motion on March 23, 2017, and the New York Court of Appeals denied leave to appeal on May 25, 2017.  *People v. Peters*, 2017 N.Y. App. Div. LEXIS 5441 (App. Div. 3d Dep't), *lv. denied*, 2017 N.Y. App. LEXIS 1962 (May 25, 2017); *see also* ECF No. 30-7 at 9-15.

Petitioner now brings this *pro se* Petition and asserts the following grounds for relief: (1) the trial evidence was legally insufficient to establish that he acted recklessly with respect to the risk of death; (2) appellate counsel was ineffective for not making certain arguments challenging the sufficiency of the evidence; and (3) Petitioner was selectively and vindictively prosecuted and subjected to vindictive sentencing because he exercised his right to go to trial.  ECF No. 18.

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim (1) resulted in a decision

that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 375–76 (2000). Thus, AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 597 (2011) (*per curiam*) (citations omitted). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

An "adjudication on the merits" is a substantive, rather than a procedural, resolution of a federal claim. *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir. 2000). Federal habeas review is available for a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

## DISCUSSION

### A.   Ground One: Legal Sufficiency of the Evidence

Petitioner argues that the People failed to prove that he acted recklessly to cause Wood's death, and that the People's evidence did not exclude the possibility that Yontz had opened the stove door and caused the fire himself. ECF No. 18 at 15-19. The Appellate Division rejected this claim on the merits. *Peters*, 126 A.D.3d at 1029-31.

A petitioner "bears a very heavy burden" when challenging the legal sufficiency of his state criminal conviction. *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (quotation marks and citation omitted). The clearly established law regarding legal sufficiency of trial evidence is set

forth in *Jackson v. Virginia*, 443 U.S. 307 (1979).  Indeed, habeas corpus relief must be denied if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id*. at 319.  In considering the sufficiency of the evidence, a federal habeas court "must view the evidence in the light most favorable to the prosecution . . . and decide whether the record is 'so totally devoid of evidentiary support that a due process issue is raised.'"  *Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir. 1994) (citation omitted).  A federal habeas court must defer to the factfinder with regard to "assessments of the weight of the evidence or the credibility of the witnesses . . . ."  *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996).

The Supreme Court in *Cavazos v. Smith*, 565 U.S. 1, 7 (2011) (per curiam), "highlight[ed] the necessity of deference to state courts in § 2254(d) habeas cases," emphasizing that "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court."  565 U.S. at 4, 7.  "The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"  *Id*. at 4 (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)).

This sufficiency-of-evidence "inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit."  *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  The reviewing court must determine "whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt . . . view[ing] the evidence in the light most favorable to the government, and constru[ing] all permissible inferences in its favor."  *United States v. Carson*, 702 F.2d 351, 361 (2d Cir. 1983) (internal citations omitted), *cert. denied sub nom. Mont v. United States*, 462 U.S. 1108 (1983).

A federal court reviewing an insufficiency-of-the-evidence claim must look to state law to determine the elements of the crime. *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002); *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999). Under New York law, a person is guilty of second-degree manslaughter when "[h]e recklessly causes the death of another person." N.Y. Penal Law § 125.15(1). In New York,

> A person acts recklessly when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto.

N.Y. Penal Law § 15.05(3). Accordingly, the People had to prove that Petitioner engaged in conduct creating a substantial and unjustifiable risk that another person would die. *People v. Hartman*, 4 A.D.3d 22, 24 (3d Dep't 2004). To establish causation, the People had to prove that Petitioner's conduct was an actual contributory cause of Wood's death—a link in the chain of causes that brought about her death—and that her death was a reasonably foreseeable result of that conduct. *People v. Asaro*, 21 N.Y.3d 677, 684 (2013).

Viewing the evidence in the light most favorable to the prosecution, *see Jackson*, 443 U.S. at 319, the proof at trial established the following. *See generally* ECF Nos. 30-8, 30-9, 30-10. Around midnight on May 7, 2011, Varlan and Petitioner drove to Varlan's cabin in Chemung County to cook meth. They picked up Wood and Yontz in Petitioner's Toyota SUV on the way. Upon their arrival, all four did a line a meth, Wood started a fire in the wood stove, Yontz read at a table near the wood stove, and Petitioner and Varlan went downstairs where they cooked meth. After several hours, Petitioner and Varlan brought meth and three plastic pitchers—filled with an extremely flammable Coleman fuel mixture—upstairs. Varlan wanted to warm up the fluid in

order to extract more meth crystals from the mixture. He testified that he set two pitchers on a metal grill on top of the left side of the wood stove and told Petitioner to put his pitcher on the stove, too. Petitioner placed his pitcher on the stove, on the right side. Varlan testified that Yontz told Petitioner not to put it directly on top of the stove. So, Petitioner found and put ceramic rings between the bottom of the pitcher and the stove.

Petitioner, Varlan, and Yontz all testified that the door to the wood stove was closed when the pitchers were placed on top of it. Varlan said that the door could have been, at most, slightly ajar but required some maneuvering of the handle to open. Yontz testified that he did not open the stove door. While the pitchers warmed up, all four did another line of meth. Petitioner went outside briefly to make a phone call. Yontz testified that when Petitioner returned, Petitioner panicked, realizing that he had left the pitcher on the stove for too long, and tried to lift the pitcher off the stove. But the bottom of the pitcher had melted, spilled fluid down the stove, and caught fire. Varlan and Yontz testified that they heard a "whoosh" sound. Contradicting this testimony, Petitioner testified that when he came back inside the cabin, the area by the stove was already engulfed in flames.

After some failed attempts to put the fire out, Yontz and Petitioner ran out of the cabin and Varlan jumped out of a bedroom window. Moments later, Wood crawled out of front door of the cabin. Her clothing and skin were on fire. Petitioner knocked her down and rolled her to extinguish the fire, and then doused her in the pond next to the cabin. Petitioner and Yontz drove Wood to Robert Packer Hospital.

Hospital surveillance video showed Petitioner's Toyota pulling up to the hospital entrance, Yontz carrying Wood into the hospital and then Petitioner getting out, closing the passenger door and driving away. Wood was airlifted to Lehigh Valley Hospital's Burn Unit and died that night.

7

New York State Trooper Gerald Segur questioned Yontz at the hospital. He later spotted Petitioner's Toyota SUV in Elmira, New York, and pulled him over. Petitioner denied having any knowledge regarding the fire, burn victim, or having been at the hospital that morning. New York State Investigator Eric Hurd questioned Petitioner the next day, at which time Petitioner waived his *Miranda* rights and gave a signed statement about the fire, stating that Varlan had placed all three pitchers on the stove.

On May 10, 2011, Petitioner joined investigators at Varlan's property and agreed to identify the areas where he and Varlan made meth. The wood stove, which had fallen from the second floor to the ground floor, was upside down and covered in debris. The chimneys had detached from it and the door was ajar. New York State Office of Fire Prevention and Control Arson Investigator James Ryan noted that the door would not stay closed unless the handle was maneuvered and, when he turned the stove upright, he saw burn patterns on the top. Plastic had also melted onto the right side of the top of the stove and down the back. Ryan testified that when the vapors of a liquid ignite, it makes a vacuum sound as the oxygen is pulled into the flame, and that vapors can escape from an open pitcher. In June 2011, the fire investigators completed an arson investigation report which concluded that the fire was caused by fuel spilling out onto the stove and coming in contact with open flame.

On July 27, 2011, Hurd interviewed Petitioner again. Petitioner again waived his *Miranda* rights and gave a signed statement admitting that he placed one of the pitchers on the stove, and said that he had previously lied because "I was just horrified by it all. I was scared. Terrified." Petitioner testified that he knew that Coleman lantern fuel was highly flammable, that a plastic pitcher would "obviously melt" if placed directly on a hotplate, and told Hurd he had once caused a small fire while making meth over a hotplate.

The jury was instructed on the law including second degree manslaughter and the lesser included offense of criminal negligence. During deliberations, the jury requested read-back of certain testimony, copies of statutes and definitions of recklessness and negligence, and found Petitioner guilty of second-degree manslaughter.

The Appellate Division found the trial evidence 1) was sufficient to prove Petitioner caused Wood's death—specifically rejecting the defense theory that Yontz had opened the stove door—and 2) was sufficient to prove the *mens rea* element of second degree manslaughter—specifically citing Petitioner's admission that he knew Coleman fuel was highly flammable, had previously caused a fire while making meth, knew that plastic pitchers would "obviously melt" if placed on a hotplate, and was aware of meth fires and lab explosions. *Peters*, 126 A.D.3d at 1030-31. Indeed, given the overwhelming evidence, a rational trier of fact could have easily found the elements of second degree manslaughter beyond a reasonable doubt. Thus, the Court finds that the Appellate Division's conclusion that legally sufficient evidence supported the conviction was neither contrary to, nor an unreasonable application of clearly established Supreme Court precedent. The Court finds Petitioner's additional arguments in support of his legal insufficiency claim to be without merit.[2]

---

[2] Petitioner argues that the People failed to exclude the possibility that Yontz opened the door to the stove and caused the fire, a defense theory which was presented to the jury. ECF No. 18 at 17-19. However, any such challenge to the weight of the evidence presented at trial is not cognizable on habeas review. "A 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law [ ("CPL") ] § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles." *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) (*citing Jackson*, 443 U.S. at 318-19). This argument was also presented to and rejected by the Appellate Division. *Peters*, 126 A.D.3d at 1030-31; *People v. Bleakley*, 69 N.Y.2d 490, 495 (1987) (CPL § 470.15(5) permits intermediate appellate courts in New York to "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony").

Similarly, to the extent that Petitioner's arguments can be construed to challenge the credibility of the witnesses, ECF No. 18 at 18-19, such a claim is not cognizable on habeas review. It is well established that a court, sitting in habeas review, may not disturb the jury's findings with respect to the witnesses' credibility. *See United States v. Roman*, 870 F.2d 65, 71 (2d Cir. 1989). The court should not substitute its own judgment, after the fact, for that of the twelve jurors who had the opportunity to observe the witnesses' demeanor as they testified. *See Nicholson v. Walker,* 100 Fed. App'x 848, 850 (2d Cir. 2004) (summary order).

**B.     Ground Two: Ineffective Assistance of Appellate Counsel**

Petitioner argues that appellate counsel was ineffective because he did not "properly" or "appropriately" argue and raise certain issues on appeal. ECF No. 18 at 20-22. Plaintiff raised an ineffective assistance of counsel claim with respect to these issues in his First Error Coram Nobis Motion, which the Appellate Division summarily denied. ECF No. 30-6 at 32-40, 105-114. Respondent argues that Petitioner is not entitled to habeas relief because appellate counsel capably advanced Petitioner's challenges to the trial evidence on appeal and the Appellate Division reasonably rejected this claim. ECF No. 30-1 at 25-28.

The Appellate Division summarily rejected Petitioner's ineffective assistance of appellate counsel claim in a two-sentence decision. ECF No. 30-6 at 104. Notwithstanding the lack of an analysis, for purposes of 28 U.S.C. § 2254(d), the claim was "adjudicated on the merits." *See, e.g.*, *Sellan*, 261 F.3d at 314 (finding claim adjudicated on merits where Appellate Division stated that ineffective assistance of appellate counsel claim was "denied"; there was "no basis for believing that the Appellate Division rejected the claim on non-substantive grounds").

Pursuant to 28 U.S.C. § 2254(d), habeas relief may not be granted "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court[,]" § 2254(d)(1), or was based upon an unreasonable determination of the facts in light of the evidence in the state record, § 2254(d)(2). Where, as here, "a state court fails to explicate a coherent rationale for its rejection of a petitioner's claim, but that rejection nevertheless is clearly on the merits, the federal court

---

Finally, any alleged challenge to the jury instruction or jury deliberation is equally meritless. In support, Petitioner refers to the fact that the jury requested read-back of certain witness testimony, copies of statutes, and definitions of recklessness and negligence during deliberations. ECF No. 18 at 16-17. Petitioner, however, does not explain how these facts support his insufficiency of the evidence claim. *Id.* at 16.

must focus its review on whether the state court's ultimate decision was an unreasonable application of clearly established Supreme Court precedent." *Aparicio v. Artuz*, 269 F.3d 78, 94 (2d Cir. 2001) (quotation marks and citations omitted).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court adopted a two-part standard for evaluating claims of ineffective assistance of counsel, which the Second Circuit has held applies equally in the appellate context. *See, e.g.*, *Hemstreet v. Greiner*, 491 F.3d 84, 89 (2d Cir. 2007) (*Strickland* applies to habeas claims asserting appellate counsel's ineffectiveness). First, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

On habeas review of a *Strickland* claim, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Upon review, the Court finds that the Appellate Division reasonably denied Petitioner's ineffective assistance of appellate counsel claim raised in his First Error Coram Nobis Motion.

Petitioner challenges appellate counsel's alleged failure to argue the legal insufficiency of the evidence and the importance of the arson report, including how its conclusion was "relevant to the read-back instructions pertaining to recklessness and negligence . . . and, most important, the evidence or testimony relied upon by the jury in reaching their verdict." ECF No. 18 at 20-21. Petitioner also states that appellate counsel should have challenged a portion of the jury instruction.

*Id*. at 21.  Petitioner claims that appellate counsel instead "argued much weaker areas of the testimony of little significance."  *Id*.  These allegations, however, fail to establish that counsel's performance was constitutionally deficient.  *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."); *Sellan*, 261 F.3d at 317 ("This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.") (citations omitted).

Moreover, the record shows that Petitioner's appellate counsel did, in fact, provide professional and competent assistance of counsel.  Appellate counsel filed a comprehensive appellate brief arguing that the trial evidence was legally insufficient to prove Petitioner's actions caused Wood's death, including that the evidence and testimony produced at trial could not exclude the possibility that Yontz had opened the stove door, that the People failed to prove Petitioner acted with negligence or recklessness, and that the consequences of Petitioner placing the plastic pitcher of Coleman fuel on the wood stove were not reasonably foreseeable.  ECF No. 30-4 at 11-50.  Specifically, appellate counsel relied on and referred to the arson report's conclusion that the wood stove door had been opened and argued that the evidence suggested that Yontz, not Petitioner, caused the fatal fire throughout his appellate brief and included supporting case law.  *Id*. at 17, 19, 26-27, 29-30, 33-40.  Appellate counsel also filed a reply brief and sought leave to appeal to the New York Court of Appeals.  ECF No. 30-6 at 5-17, 24-26.  To the extent that Petitioner claims appellate counsel failed to challenge the jury instructions as to accomplices or the required *mens rea* for second degree manslaughter and criminal negligence on appeal, ECF No. 18 at 21-22, Petitioner has failed to support these assertions with any substantive facts.

On these facts, the Court finds that the Appellate Division did not unreasonably apply the *Strickland* test to Petitioner's ineffective assistance of appellate counsel claims when it summarily denied his First Error Coram Nobis Motion. Accordingly, Petitioner's ineffective assistance of appellate counsel claim is dismissed.

## C.  Ground Three: Selective and Vindictive Prosecution and Sentencing

Petitioner argues that his rights under the Equal Protection Clause were violated when he was subjected to selective and vindictive prosecution and vindictive sentencing. ECF No. 18 at 24-28. In support, Petitioner points out that Yontz was not charged with any crime in connection to the incident, despite testimony that Yontz had supplied the anhydrous ammonia, stripped the batteries for lithium, and made meth with Varlan the night before the fatal fire, and that Petitioner was sentenced to the maximum prison term and ordered to pay $43,650.34 restitution. *Id*. Petitioner argued in his Second Error Coram Nobis Motion that his appellate counsel was ineffective for failing to argue that Petitioner was vindictively prosecuted and sentenced, which argument the Appellate Division summarily denied. ECF Nos. 30-6 at 115-120; 30-7 at 9-15. Respondent argues these claims are unexhausted and without merit. ECF No. 30-1 at 28-32.

Generally, a federal court will not entertain a habeas corpus petition from a state prisoner unless the prisoner has exhausted state court remedies. 28 U.S.C. § 2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Exhaustion of state remedies requires presentation of the claim to the highest state court from which a decision can be obtained. *Daye v. Attorney General of the State of New York*, 696 F.2d 186, 190 n.3 (2d Cir. 1982). In addition, a petition that contains both exhausted and unexhausted claims should be dismissed so that the state courts have an opportunity to decide the unexhausted issues. *Rose v. Lundy*, 455 U.S. 509, 510 (1982).

Petitioner's vindictive prosecution and sentencing claim is unexhausted but must be deemed exhausted and procedurally barred because Petitioner has no remedies available in state court.[3] "[W]hen 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,'" federal habeas courts also must deem the claims procedurally defaulted." *Aparicio*, 269 F.3d at 90 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)). Courts will not review the merits of a procedurally defaulted claim unless the petitioner can show (1) cause for the default and actual prejudice resulting therefrom; or (2) that failure to consider the claim will result in a fundamental miscarriage of justice. *Id*. at 91.

Petitioner has not demonstrated cause and prejudice sufficient to obtain review of these claims. First, Petitioner cannot demonstrate cause because he cannot establish that appellate counsel was constitutionally deficient to excuse his default as to his vindictiveness claims. Indeed, the Appellate Division rejected his ineffective assistance of appellate counsel claim when it summarily denied his Second Error Coram Nobis Motion. *See Sellan*, 261 F.3d at 314. Moreover, Petitioner does not renew his ineffective assistance of appellate counsel for failing to raise vindictive prosecution and sentencing claims in the Petition.

Second, Petitioner cannot establish prejudice because his vindictive prosecution and sentencing claims are without merit. With respect to his vindictive prosecution claim, Petitioner

---

[3] While Petitioner argued in his Second Error Coram Nobis Motion that his appellate counsel was ineffective for not arguing vindictive prosecution and sentencing on appeal, Petitioner did not exhaust the vindictiveness claims themselves because he did not raise them independently on appeal or in a CPL § 440 motion. Indeed, only ineffective appellate counsel arguments may be exhausted in a coram nobis motion, and not the underlying appellate claims that a petitioner believes his or her counsel should have advanced or advanced poorly. *See Turner v. Artuz*, 262 F.3d 118, 121 (2d Cir. 2001) ("[A] petitioner cannot show exhaustion unless he has 'fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts [,]'" but "[t]he only constitutional claim Turner was permitted to raise in seeking a writ of error coram nobis was ineffective assistance of appellate counsel, a claim that is distinct from [the prosecutorial misconduct] claims . . . in procedural terms under state law and in their federal constitutional sources.").

14

points to the fact that Yontz was not charged with any crime in connection to the incident, despite testimony that Yontz had supplied the anhydrous ammonia, stripped the batteries for lithium, and made meth with Varlan the night before the fatal fire. ECF No. 18 at 24-27. However, the record shows that Yontz did not participate in making meth the night of the fatal fire, and Varlan testified that Yontz told Petitioner not to place the plastic pitcher directly on the wood burning stove. ECF No. 30-9 at 172-73, 216-17. Investigator Hurd testified that "we didn't have any evidence at all that [Yontz] was involved in the making of this meth," and that throughout the investigation "we were trying to link [Yontz's] involvement to [the fire]" but were unable. *Id*. at 108-110. In support of his vindictive sentencing claim, Petitioner states that he was sentenced to the maximum term and ordered to pay an "outrageous" sum of restitution in order to punish him for exercising his constitutional right to a jury trial. ECF No. 18 at 27-28. Without more, these allegations do not suggest that Petitioner's sentencing was vindictive. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (a petitioner's challenge to the term of his sentence generally does not present a cognizable constitutional issue if the sentence falls within the applicable statutory range).

Additionally, Petitioner cannot obtain review of these claims on the ground that he is actually innocent, as he offers no new or credible evidence of innocence in his Petition, or that a failure to review them will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 748-51. Accordingly, to the extent Petitioner seeks federal habeas relief on the basis of an unexhausted selective and vindictive prosecution and vindictive sentencing claims, the claims are deemed exhausted but procedurally barred and thus denied on the basis of Petitioner's procedural default, or alternatively, denied on the merits pursuant to § 2254(b)(2), notwithstanding the failure of Petitioner to exhaust state remedies. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust

the remedies available in the courts of the State."); *see also Rhines v. Weber*, 544 U.S. 269, 277 (2005) ("[T]he district court would abuse its discretion if it were to grant [petitioner] a stay when his unexhausted claims are plainly meritless").

## CONCLUSION

For the reasons stated above, Petitioner's request for habeas relief pursuant to 28 U.S.C. § 2254 is denied, and the Petition is dismissed. As Petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability will issue. See 28 U.S.C. § 2253(c)(2). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. *Coppedge v. United States*, 369 U.S. 438 (1962). Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure. Procedure.

IT IS SO ORDERED.

Dated: December 15, 2020
      Rochester, New York

                                        HON. FRANK P. GERACI, JR.
                                        Chief Judge
                                        United States District Court